# IN THE COURT OF APPEALS OF IOWA

No. 20-1467
Filed March 30, 2022

**DAVID ALAN FEEBACK,**
 Plaintiff-Appellant,

**vs.**

**SWIFT PORK COMPANY, TROY MULGREW and TODD CARL,**
 Defendants-Appellees.
_____

 Appeal from the Iowa District Court for Marshall County, Bethany Currie, Judge.

 David Feeback appeals the grant of summary judgment on his employment lawsuit. **AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.**

 Bruce H. Stoltze Jr. of Stoltze & Stoltze, PLC, Des Moines, for appellant.

 Ruth A. Horvatich and Aaron A. Clark of McGrath North PC LLO, Omaha, Nebraska, for appellees.

 Heard by Bower, C.J., and Tabor and Chicchelly, JJ.

**TABOR, Judge.**

Swift Pork Company fired long-time employee David Feeback after he sent offensive text messages to a supervisor. In response, Feeback sued, alleging age discrimination, workplace harassment, and wrongful termination. The district court granted summary judgment for Swift[1] on all three claims. Because a genuine issue of material fact exists on the age-discrimination claim, we reverse that part of the judgment and remand. But no reasonable jury could find in Feeback's favor on the other two claims. So we affirm on the remaining issues.

## I. Facts and Prior Proceedings

Sixty-year-old Feeback worked at Swift for over two decades. As middle management, he ran the cut floor for years, receiving mostly positive reviews. Then in 2015, he started to receive negative feedback from his bosses. In May, Feeback broached safety concerns with his direct supervisor, plant manager Todd Carl. Swift was using worn-out trolleys to move carcasses on a rail system. Feeback warned: "Due to the wear on the trolleys, carcasses were sliding back down the incline and falling off the rail." But Carl grew angry, emphasized the high replacement costs, and ended the conversation.[2] In a phone call a few weeks later, Feeback reiterated his worry that someone could be hurt by a falling carcass. But like the last time, Carl was unreceptive, hanging up mid-conversation.

---

[1] Feeback's suit named Swift Pork Company, as well as supervisors Troy Mulgrew and Todd Carl. For brevity, we will use the shorthand Swift when discussing all three defendants.

[2] Although Feeback suggests Carl ignored this safety issue, Swift was addressing the trolley problem when Feeback was terminated.

As Feeback tells it, Carl's antagonism extended beyond that safety issue. For instance, he accused Feeback of being "asleep at the wheel" and letting his department run "out of control." Soon, Feeback also detected hostility from Carl's supervisor, general manager Troy Mulgrew. In particular, Feeback recalled that Mulgrew once interrupted Feeback's bathroom break, accusing him of "fucking around" in there. For a time, tensions eased. But workplace frictions flared again near the holidays. In early December 2015, Feeback skipped a staff meeting, choosing to stay on the short-staffed cut floor instead. That choice angered Mulgrew, who reprimanded Feeback. And, despite approving Feeback's absence, Carl said nothing.

But New Year's Eve proved the final straw. Trying to make up missed safety training sessions, Feeback scheduled an afternoon meeting for his department. But Swift often let employees go early on that date. Annoyed, Feeback's crew complained to Mulgrew. The manager intervened, cancelled the meeting, and sent the employees home for the holiday. While the crew's day was over, Feeback wasn't so lucky. Instead, Mulgrew called Feeback and Carl into his office where he criticized Feeback at length. When Feeback tried to defend himself, Mulgrew said that "he should be sitting there with his mouth shut and arms wide open."

That night, Feeback sent two text messages to Mulgrew. The first read "FUCK You!" The second, "Believe who and what you want." Although Feeback later claimed he meant to send the texts to his friend, Tim Turner, Feeback took no action to explain the alleged mistake to Mulgrew.

Upset by the perceived insubordination, Mulgrew sent a screenshot of the texts to Pete Charboneau, Swift's head of human resources. The next morning,

Charboneau called Feeback. Feeback admitted sending the texts but told Charboneau that "it was by mistake." Charboneau asked why Feeback had not "rescinded" the messages; Feeback replied he did not know how. Feeback also testified in his deposition that he hadn't explained the mistake to Mulgrew because his meeting with Charboneau happened first thing in the morning.

Without further investigation, Charboneau suspended Feeback. And, a few days later, Feeback was terminated.

In May 2018, Feeback sued, alleging age discrimination, retaliation, workplace harassment, and wrongful termination. As trial neared, Swift moved for summary judgment on the age discrimination, harassment, and wrongful termination claims.[3] Finding no genuine issues of material fact, the district court granted Swift's motion. Feeback now appeals.

## II.    Scope and Standard of Review

We review grants of summary judgment for errors at law. *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 71 (Iowa 2004). Like the district court, we view the record in the light most favorable to the nonmoving party. *Bill Grunder's Sons Const. Inc. v. Ganzer*, 686 N.W.2d 193, 196 (Iowa 2004). If the district court correctly applied the law and there was no genuine issue of material fact, we affirm. *Id.* We consider an issue to be material if its determination affects the suit's outcome. *Id.* And the dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

---

[3] Feeback withdrew the retaliation claim before Swift's summary-judgment motion.

"Mere skepticism of a plaintiff's claim is not a sufficient reason to prevent a jury from hearing the merits of a case." *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005). So particularly in discrimination cases

> [w]e should approach . . . with great caution. We should carefully examine the facts and ask ourselves with self-critical rigor and discipline the following: Have we refused to engage in credibility determinations? Have we refused to weigh the evidence? Have we given every legitimate inference of the meaning of evidence to the nonmoving party?

*Hedlund v. State*, 930 N.W.2d 707, 742 (Iowa 2019) (Appel, J., concurring in part and dissenting in part).

### III.    Analysis

Feeback advances three causes of action: (1) age discrimination; (2) harassment; and (3) wrongful termination. We take each in turn.

### A.    Age discrimination

Feeback first claims age discrimination provoked his firing. That claim arises under the Iowa Civil Rights Act (ICRA), which declares that it is a discriminatory practice to discharge any employee because of age, unless based on the nature of the occupation. Iowa Code § 216.6(1)(a) (2015).

To start, we focus on that "because of age" language, or in other words, causation. The parties clash over which causation test controls at the summary judgment stage. On one side, Feeback points to *Hawkins v. Grinnell Regional Medical Center*, 929 N.W.2d 261 (Iowa 2019). There, our supreme court "adopted the motivating-factor test for causation in ICRA discrimination cases." *Id.* at 272. On the other side, Swift argues the *McDonnell-Douglas* burden-shifting analysis

still controls. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

True, *Hawkins* abandoned the *McDonnell-Douglas* test for instructing the jury in a civil rights case. 929 N.W.2d at 272. But the proper standard on summary judgment remains an open question. *See Hedlund*, 930 N.W.2d at 719 (declining to resolve the ambiguity); *see also Watkins v. City of Des Moines*, No. 19-1511, 2020 WL 2988546, at *4–7 (Iowa Ct. App. June 3, 2020) (conducting both analyses). So we consider both tests.

### 1. *McDonnell-Douglas*

*McDonnell Douglas* involves three steps. First, Feeback must establish a prima facie discrimination case. *See* 411 U.S. at 802. Then, Swift may rebut that prima facie case by showing "some legitimate, nondiscriminatory reason" for its action. *See id.* Finally, Feeback must show the offered justification was pretext and unlawful discrimination the actual reason for termination. *See id.* at 804.

Here, the first two steps are uncontroversial. When fired, Feeback was over forty and had generally performed satisfactorily on the job.[4] *See Vaughn v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996) (describing three requirements of prima facie case). For step two, Swift points to the disrespectful texts as a legitimate, nondiscriminatory basis for termination.

And now we reach the heart of the dispute: was Swift's reason for firing Feeback pretextual? Feeback insists harsh language was ingrained in Swift's workplace culture. Because it was such a common occurrence, Feeback contends

---

[4] Swift suggests that negative employee reviews existed. But Swift could not produce any records.

that his profane text could not be the real reason he was fired. Instead, he asserts his age was the determinative factor. Supporting this position, Feeback points to a pattern of older employees being terminated, demoted, or otherwise forced out before retirement.

Swift disagrees with Feeback's contention, arguing any similarly situated employee would have been fired. Granted, profanity may have been pervasive at the packing plant. But, in Swift's view, it was not just Feeback's use of the word "fuck" in his text that led to his firing. It was the insubordination of directing such a verbal assault at one's supervisor that set his case apart. And Feeback's singular situation aside, Swift argues his pattern evidence should not be considered.

At this stage, we view the facts in the light most favorable to Feeback, making all legitimate inferences in his favor. *See Ganzer*, 686 N.W.2d at 196. That standard in mind, we believe a reasonable jury could find that Swift used the text message as a pretext to terminate Feeback's long-term employment with the company based on his advancing age.

No doubt, insubordination could prompt a termination. But there's a fact question about who Feeback *meant* to text. As soon as he was confronted by Charboneau, Feeback insisted Mulgrew was an unintended recipient. And other evidence arguably supports the mistake theory. One of the two messages did not make perfect sense in context. Granted, Mulgrew had rebuked Feeback earlier that day. But the central dispute did not revolve around competing versions of truth. So the second text—"Believe who and what you want."—did not fit with the conversation. Indeed, Mulgrew later agreed the second message seemed off and there could have been a "possible" alternative recipient.

Given the potential misunderstanding, a reasonable jury may have credited Feeback's version when presented with Swift's hasty response. Rather than investigate a possible miscommunication, Charboneau suspended Feeback on the spot. And within days he was fired. Considering Feeback's decades with the company, the ax fell with surprising speed. Indeed, during a deposition, Mulgrew admitted the precipitous decision was "concerning" and that he "would expect someone to look" into the situation before acting. What's more, a text exchange between the supervisors suggested Carl welcomed Feeback's rapid departure.[5]

Beyond the possibility that the texts were not intended for Mulgrew and the cursory investigation, there's the company culture. Swearing was common. According to Feeback, "pretty much anything went when it came to language" and he notes over seventy-five instances when younger employees swore "at or in front of supervisors."[6] Indeed, Swift doesn't contest this phenomenon; Mulgrew agreed

---

[5] After learning that Feeback was suspended, Mulgrew messaged Carl, stating, "Feeback not allowed to work." Carl replied: "Amen."

[6] Swift launches two attacks on this information. First, it argues the statements were inadmissible hearsay. Second, it contends the other employees weren't similarly situated.

Hearsay first, we agree with the district court: the statements aren't offered for their truth. Instead, Feeback offers them to show that the cursing happened. *See* Iowa R. of Evid. 5.801(c).

As for being similarly situated, Swift notes none of those other employees swore at Mulgrew. *See Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1163 (8th Cir. 2016) (characterizing the similarly situated test as a "rigorous" one which should consider all "relevant aspects"). But that fact may not be dispositive. *See Anderson v. WBMG-42*, 253 F.3d 561, 565–66 (11th Cir. 2013) (rejecting "proposition that whenever two different supervisors are involved . . . the comparators cannot as a matter of law be similarly situated."). Indeed, the test may be more malleable than Swift suggests. *See, e.g., Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (testing for "comparable seriousness," not a "clone"); *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (looking for a "convincing mosaic" of evidence that could lead to inference of

cursing was not unusual in their workplace. In sum, a reasonable jury—considering the workplace norms, Feeback's ambiguous intent, and the lack of investigation—could find the quick termination was pretextual.

But was it based on age? Showing pretext alone is insufficient; pretext must be coupled with discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000) ("It is not enough to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination") (emphasis original) (cleaned up). The district court found no discrimination because Feeback "lack[ed] . . . affirmative evidence that . . . age actually played a role in the decision to terminate his employment." We agree the record contains no comments from Carl or Mulgrew revealing discriminatory feelings toward Feeback based on his age. *See Hedlund*, 930 N.W.2d at 721 (discussing when remarks by decision makers may show influence of discriminatory feelings on adverse employment action).

But Feeback does not need direct proof of discriminatory intent to survive a summary-judgment motion. A contrived reason for termination is a sign of discrimination. *See Smidt v. Porter*, 695 N.W.2d 9, 16 (Iowa 2005).[7] "[O]nce the

discrimination); *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018) (describing the test as "flexible, common-sense, and factual").

In any event, we decline to decide this issue for three reasons. First, we see this as workplace culture, not comparator evidence. Second, the district court did not decide this issue. And, third, missing a similarly situated employee isn't fatal to a discrimination claim. *See, e.g.*, *Gustafson v. Genesco, Inc.*, 320 F. Supp. 3d 1032, 1050 (S.D. Iowa 2018) (denying summary judgment in sex discrimination case in which "Gustafson cannot show she was treated differently from similarly situated male employees" but produced other evidence).

[7] *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993) ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination.").

employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* (quoting *Reeves,* 530 U.S. at 147–48). In *Reeves*, the court explained that "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability." 530 U.S. at 149. In other words, in appropriate circumstances a plaintiff may create a fact question by showing "the employer is dissembling to cover up a discriminatory purpose." *Id.* at 147.

We find such circumstances are present here. In his prima facie case, Feeback asserts Swift has a pattern of demoting, terminating, or forcing out older employees. He believes that, as a sixty-year-old employee nearing retirement, he was the latest casualty of this practice.

To support this claim, Feeback relies on an affidavit tracking his observations during his years at Swift.[8] He describes nine management-level employees who were "forced out after reaching age fifty-six." He also notes Swift's "high management turnover rate and low retirement rate." But again Swift challenges the affidavit, arguing its substance would be inadmissible at trial. *See* Iowa R. Civ. P. 1.981(5) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

---

[8] The district court characterized the affidavit as "self-serving." But that characterization suggests a credibility determination—improper on summary judgment. Even affidavits which prove to be self-serving may be evidence for the trier of fact to believe or disbelieve. *See Bieniak v. Romstad*, No. 05-0432, 2005 WL 1750489, at *5 (Iowa Ct. App. July 27, 2005).

stated therein."). The district court agreed, finding Feeback's "barebones allegations regarding other employees" cannot be considered.

Feeback counters that his information about the fate of those older employees was based on his "personal knowledge of management decisions" and "his own observations whether employees were terminated or demoted and how old they were at the time the termination or demotion occurred."[9] Unlike the district court, we find Feeback's affidavit contains "competent evidence even if it is not the strongest evidence." *See Cap. One Bank (USA), N.A. v. Taylor*, No. 13-2043, 2015 WL 7567398, at *6 (Iowa Ct. App. Nov. 25, 2015) (quoting definition of competence in *Black's Law Dictionary* (10th ed. 2014) as "a basic or minimal ability to do something; adequate qualification, esp[ecially] to testify"). Feeback's awareness of what was happening in his workplace offered more than conjecture. *Contrast Wemett v. Schueller*, 545 N.W.2d 1, 3 (Iowa Ct. App.1995) (determining affidavit based on mere speculation could not avoid summary judgment). All nine people who Feeback mentions stopped working for Swift after reaching their late fifties. A jury could find this evidence persuasive on his discrimination claim. We conclude Feeback's affidavit set forth specific facts, based on his personal knowledge of events in his workplace, showing there is a genuine issue of material fact for trial, as required to defeat a motion for summary judgment. *See* Iowa R. Civ. P. 1.981(5).

---

[9] The following example is representative: "In approximately 2009, Ms. Hughlette, Human Resources Manager, was terminated. She was approximately fifty-six years old."

### 2. Motivating Factor

We next consider the motivating-factor test. Under this test, the plaintiff's protected characteristic must be a motivating factor in the adverse employment decision. *Hawkins*, 929 N.W.2d at 270. The motivating-factor standard is more easily met than the *McDonnell Douglas* test because Feeback need not show Swift's rationale for his firing was pretextual. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016) (describing "*McDonnell Douglas*'s pitfall of demanding that employees show pretext" as "unnecessary" under motivating factor test).

We find a triable issue of material fact under the motivating-factor test. Feeback offered evidence that he was "ostensibly terminated" for his profane text, while younger employees faced no repercussions for swearing in the workplace. That disparate treatment, viewed together with the lack of investigation into the intended recipient of his texts, could convince a reasonable jury that Swift fired Feeback because of his age. Thus, we reverse the grant of summary judgment on Feeback's age discrimination claim and remand for trial.

### B. Workplace Harassment

Feeback next claims Swift hosted a hostile-work environment. To succeed, Feeback must prove these elements: (1) membership in a protected group; (2) unwelcome harassment; (3) because of that group membership; (4) which impacts a term, condition, or privilege of employment. *See Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 571 (Iowa 2017). To satisfy the fourth element, Feeback must show his workplace was "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to

alter the conditions" of his employment and "create an abusive working environment." *Id.* In considering this standard, we weigh: (1) the conduct's frequency; (2) its severity; (3) whether the conduct was physically threatening or humiliating or merely offensive; and (4) whether the conduct unreasonably interfered with job performance. *Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n*, 672 N.W.2d 733, 744 (Iowa 2003).

The summary-judgment record includes several incidents that Feeback considers harassing—some by Carl, some by Mulgrew. For instance, Carl once criticized Feeback's management skills, claiming he was "sleeping at the wheel." Another time, Carl hung up while Feeback voiced safety concerns. And finally, Carl stood silent while Mulgrew reprimanded Feeback for missing a meeting—despite Carl excusing the absence. Turning to Mulgrew, Feeback asserts that the general manager twice said the word "fuck" around him, including once while he was on a bathroom break.

But even viewing Feeback's evidence in the most favorable light, we cannot find the offending conduct was pervasive or severe.[10] First, the isolated instances happened over seven months. Second, the conduct was not menacing. Third, it was not physically threatening. And fourth, the incidents did not impact his job performance. On this record, the grant of summary judgment was proper.

### C. Wrongful termination

Third and finally, Feeback alleges wrongful termination. He claims his firing was retaliatory, a response to his complaints about the unsafe trolley system. To

---

[10] Feeback's counsel acknowledged at oral argument that this claim was not as strong as the age-discrimination cause of action.

prevail on this claim, Feeback must establish: (1) he engaged in a protected activity; and (2) suffered adverse employment action; (3) because of that activity. *See Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1989).

Swift focuses on the third element: causation.[11]  For a retaliatory discharge claim, the causation standard is higher than for a civil rights claim.  *Id.* at 301. Unlike the motivating-factor test for age discrimination, Feeback must show his protected activity was the *determinative* factor in his termination.  *See Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 893 (Iowa 2015).  But it "need not be the main reason behind the decision."  *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990).  Rather, the determinative factor is "the reason which tips the scales decisively one way or the other."  *Id.*

We understand that causation and motive questions are generally best left for resolution by a jury.  *See Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 289 (Iowa 2000).  But summary judgment is proper if the plaintiff fails to link the protected activity to the firing.  *See Phipps v. IASD Health Serv. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997).  That was the case here.  First, seven months elapsed between Feeback's last-voiced safety concern and his termination.  Second, when Feeback was fired, Swift was updating the trolley system to address the concerns. Third, the record lacks evidence Charboneau was aware of Feeback's complaints.

---

[11] Swift argued in the district court that Feeback's safety complaints did not "amount to a defined and well-recognized public policy and that Carl and Mulgrew cannot be held individually liable for wrongful termination."  On appeal, Swift contends we need not reach those issues if we find Feeback's comments about the trolleys were not the reason he was fired.

Given these circumstances, no reasonable jury could find Feeback's safety alerts tipped the scales toward termination.

To recap, we affirm the district court's grant of summary judgment on the hostile-work-environment and wrongful-termination causes of action. But we reverse on the age-discrimination claim, remanding that cause of action for further proceedings.

**AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.**