STATE of Iowa, Appellee,

v.

Frederick L. SOWDER, Appellant.

No. 85–723.

Supreme Court of Iowa.

Oct. 15, 1986.

John G. Linn, Public Defender, Burlington, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., William Dowell, Co. Atty., and Todd Tripp, Asst. Co. Atty., for appellee.

Considered by HARRIS, P.J., and Mc-GIVERIN, LARSON, CARTER, and LA-VORATO, JJ.

McGIVERIN, Justice.

Defendant Frederick L. Sowder appeals from his conviction of first-degree robbery. The court of appeals reversed and remanded for a new trial. Upon consideration of the issues raised, we reach the same result as the court of appeals.

On October 29, 1984, the Swift Shop, a convenience store in Burlington, was robbed by a man wearing a red ski mask and armed with a buck knife. In November 1984 the defendant Frederick L. Sowder was arrested for the crime and charged with first-degree robbery. Iowa Code §§ 711.1–.2 (1983). He pled not guilty and the case was tried before a jury.

Alan Leffler, a friend of Sowder, testified at trial for defendant regarding his relationship with Sowder. During his cross-examination by the State, the following exchange occurred:

Q: Did [Sowder] ever talk to you about his involvement in the robbery? A. Not really.

Q: During that meeting in October at the Sportsman lounge, did he talk to you about his involvement in the robbery? A. No.

Q: Never said a word about it? A. Huh-uh.

Leffler thereby effectively denied ever hearing Sowder discuss the robbery of the Swift Shop.

In his own defense, Sowder stated on cross-examination by the State that he had never told anyone he committed the robbery. Specifically, he denied telling Leffler anything about his involvement in the robbery of the Swift Shop.

In rebuttal, the State called Jean Buchholz, Alan Leffler's girlfriend. She testified that Leffler told her that Sowder told him that Sowder had committed the Swift Shop robbery. Her testimony on direct examination by the prosecutor occurred as follows:

Q: How did you learn that Fred [Sowder] and Alan [Leffler] had a conversation? A. Alan told me.

Q: And did Alan tell you what the conversation was he had with Fred? A. Yes.

Q: And what was that conversation? Defense counsel then interposed a hearsay objection. The court, after an offer of proof by the State in chambers, overruled defendant's objection and the following occurred in the presence of the jury:

THE COURT: You may answer.

MS. BUCHHOLZ: First I said to Alan—I said, "Did you know that Fred got that money from holding up that convenience store?" And he said, "Yes, Fred told me in the bathroom."

And then the one thing I remember Alan saying, because I thought it was

ironic, is when Fred hold up the knife to his throat—the girl—

\* \* \* \* \*

He said that Fred had held up the convenience store and that's how he got if [sic] money.

Q: And did he state how he had done that? A. Yes. He held a knife up to her throat is what Alan said.

The court then admonished the jury to consider this testimony only on the issue of whether the statements were made by defendant to Leffler and not as to the truth of the assertions in the statements, giving this cautionary instruction:

> THE COURT: Now, Ladies and Gentlemen, this testimony that you just heard in response to these two questions is being permitted into the record for you to consider whether these statements were made. They are not submitted to you upon the issue of whether the statements are offered to establish or prove the truth of any fact asserted in the statements.

Defense counsel moved for a mistrial due to the admission of the statements over his hearsay objection, and the motion was denied by the court.

At the close of the trial in the instructions to the jury, the court repeated its admonition, warning the jury that Buchholz's testimony

> may be considered by you solely for the purpose of determining whether or not the statements were made; and ... not ... upon the question of the truthfulness of any fact asserted in the statements.

The jury returned a verdict of guilty on the first-degree robbery charge. Sowder's motion for a new trial, Iowa Rule of Criminal Procedure 23(2), was overruled, and sentence was pronounced. *See* Iowa Code § 902.9(1).

Sowder appealed his conviction, asserting the trial court erred 1) in admitting Buchholz's alleged hearsay testimony, and 2) in denying his motion for judgment of acquittal.

We transferred the case to the court of appeals. Iowa R.App.P. 401. That court reversed, concluding the requirements for the use by the State of a prior inconsistent statement for impeachment purposes were not satisfied and reversible error occurred. It remanded the case for a new trial. We granted further review to examine those determinations. Iowa R.App.P. 402.

In oral argument before us, counsel for defendant stated that he now waived the issue concerning the trial court's denial of his motion for judgment of acquittal. Therefore, we do not consider it.

I. *Admissibility of Buchholz's rebuttal testimony.* Defense counsel timely interposed a hearsay objection to the testimony by the State's witness, Jean Buchholz, that Leffler told her that he and Sowder had discussed Sowder's involvement in the Swift Shop robbery. Iowa Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

The State asserted the testimony by Buchholz was being elicited as non-hearsay evidence, to prove Leffler made a prior inconsistent statement. A statement that would be hearsay if offered for the truth of its assertion is characterized as non-hearsay if it falls within the terms of Iowa Rule of Evidence 801(d). A prior statement of a witness used to impeach the witness' testimony is not hearsay when the statement is not offered to prove the truth of the statement, but rather to prove the fact the witness made a statement at a previous time. *State v. Jones,* 271 N.W.2d 761, 767 (Iowa 1978). The trial court overruled defendant's hearsay objection and allowed the Buchholz testimony, subject to an instruction limiting the jury's use of the testimony to impeachment of Leffler.

In *State v. Horn,* 282 N.W.2d 717, 723–24 (Iowa 1979), we addressed a defendant's objection to the use of an alleged hearsay statement by a prosecution witness establishing a conversation between

the defendant and a third individual. To determine if the statement was admissible, we analyzed the purposes for which the alleged hearsay testimony was offered. *Id.* at 724. The prosecution contended the testimony was being offered only to show a conversation had taken place between the defendant and a third person. Defense counsel argued the state was attempting to prove the truth of the statement, which was to the effect the defendant ordered a death contract that the third person was to perform. In analyzing the statement, we looked at the *real* purpose for the offered testimony, not just the purposes urged by the prosecutor. *Id.* We determined the state was offering the testimony for the truth of the content of the statement, and not for the purpose it alleged; therefore, we deemed the statement inadmissible hearsay.

This case is analogous to the *Horn* case. Thus, our analysis is guided by the "purpose" test set out therein. For later applications of the *Horn* purpose test, see *State v. Galvan,* 297 N.W.2d 344, 346 (Iowa 1980); *State v. Maniccia,* 355 N.W.2d 256, 260 (Iowa Ct.App.1984); and *State v. Mueller,* 344 N.W.2d 262, 264 (Iowa Ct.App. 1983). Buchholz testified Leffler told her that he had a conversation with Sowder in which Sowder admitted his involvement in the Swift Shop robbery and recounted how Sowder had placed a knife to the store clerk's throat. The State contends the evidence was not hearsay because it was not offered to prove the truth of Sowder's statements, rather it was offered to impeach Leffler's testimony that Sowder had not spoken with him about the robbery. *See* Iowa Rule of Evidence 801(d)(1)(A). The State denies its purpose in introducing the evidence was to prove Sowder admitted his participation in the crime.

Sowder, on the other hand, contends the sole purpose for introduction of Buchholz's testimony was to prove Sowder admitted his involvement in the robbery to Leffler. Despite a cautionary instruction, defendant asserts the jury would probably use the statement as substantive evidence against

him as a confession or incriminating statement.

Our determination does not turn alone, however, on the State's represented purpose but rather is an objective finding based on the facts and circumstances developed by the record.

Buchholz's testimony was inadmissible in the State's case-in-chief because it was double hearsay. Her statement recounted Leffler's narration of what Sowder said to him in a conversation to which Buchholz was not privy. This type of evidence is clearly hearsay. *State v. Evans,* 169 N.W.2d 200, 206 (Iowa 1969). Thus, to be admissible, each statement or level of hearsay must be deemed non-hearsay or fall within an exception to the hearsay rule. Iowa R. Evid. 805.

The State justifies the trial court's ruling by saying that the testimony was admissible for another purpose which was to impeach Leffler. It is correct that a prior, inconsistent, out-of-court statement offered for impeachment purposes falls outside the definition of hearsay. *State v. Hill,* 243 N.W.2d 567, 570 (Iowa 1976). *Hill* does not, however, hold that what would otherwise be double hearsay can be similarly stripped of its hearsay nature by being offered for impeachment purposes.

We consider the scope of the examination in determining the real purpose for which the testimony was offered. The State went beyond merely establishing a conversation between Leffler and Sowder. It brought out the details of the conversation. By bringing out the specific statements made, not merely focusing on the fact a conversation occurred, the State attempted to establish the truth of the facts asserted in the conversation, specifically that Sowder admitted committing the robbery and described the details thereof. The scope of examination concerning the alleged conversation clearly went beyond mere impeachment of Leffler.

In view of our conclusion that the real purpose of Buchholz's testimony was to prove the truth of Sowder's out-of-court statements to Leffler, the Buchholz testi-

mony concerning what Leffler told her constitutes hearsay evidence. There was no exception asserted by the State under which this level of hearsay would be admissible. *See* Iowa R.Evid. 803. Therefore, the testimony was inadmissible hearsay. Because we are satisfied the testimony was not actually offered for impeachment purposes at the Leffler to Buchholz level, we need not decide whether the initial statement from Sowder to Leffler is non-hearsay or falls within an exception to the hearsay rule. The trial court erred in failing to exclude this testimony over the objection of defense counsel.

■ II. *Harmless error.* The State asserts that admission of this testimony was harmless error. Prejudice is presumed if hearsay is admitted, unless the contrary is affirmatively established. *State v. Horn,* 282 N.W.2d at 724; *State v. Johnson,* 272 N.W.2d 480, 482 (Iowa 1978); *State v. Menke,* 227 N.W.2d 184, 188 (Iowa 1975). We have held that where substantially the same evidence is in the record, erroneously admitted evidence will not be considered prejudicial. *State v. Gilmore,* 259 N.W.2d 846, 858 (Iowa 1977); *accord State v. Horn,* 282 N.W.2d at 724 (harmless error if there is a "multiplicity of the substantially same evidence introduced").

■ There is no other evidence to support Buchholz's testimony concerning the conversation between Leffler and Sowder. Neither of those men acknowledged having a conversation regarding Sowder's involvement in the Swift Shop robbery.

Because there is no other evidence relating the Sowder-Leffler conversation before the jury, we must assess whether the other evidence is so overwhelming as to prove the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710–11 (1967); *State v. Craney,* 347 N.W.2d 668, 673–76 (Iowa 1984); *State v. Ware,* 205 N.W.2d 700, 704–05 (Iowa 1973).

In *Ware,* the trial court erroneously admitted the defendant's confession of guilt which had been coerced by two police officers. 205 N.W.2d at 702. The jury was admonished to disregard the admission in its deliberations. We relied on *Chapman* in holding the admission of Ware's statement constituted reversible error. *Id.* at 705. *Chapman* requires "the error must be harmless beyond a reasonable doubt *and* the state must show it did not contribute to the conviction." *Ware,* 205 N.W.2d at 704 (emphasis in original).

The State in this case was attempting to establish a connection between Fred Sowder and the robbery at the Swift Shop. It had the testimony of the store clerk, Amy Jo Reighard, and several casual observers as well as Barbara Saben, Sowder's girlfriend and housemate at the time of the robbery, to support its case. Their testimony and the physical evidence tended to link Sowder to the crime.

In the present case, the trial court gave two cautionary instructions on the subject of Buchholz's testimony. The statement about a knife being held to the throat of the store clerk had been before the jury in the testimony of Reighard and Saben. Saben also testified that Sowder told her he had robbed the convenience store.

The store clerk's testimony concerning what occurred during the course of the robbery mirrored Saben's testimony derived from her conversation with Sowder the evening of the robbery. Sowder's physical attributes conformed to Reighard's testimony. The physical evidence admitted at trial also matched the testimony elicited, linking Sowder to the robbery. The store clerk, however, could not positively identify defendant as the robber.

By substantial evidence defendant attacked the reliability of Saben and her testimony. Saben testified she had not reported Sowder's involvement in the robbery to the police initially, reporting his activities only after being thrown out of his trailer. Saben had also provided a ski mask and a stocking cap with eyeholes cut in it to Sowder and Dannie Petty on October 29, 1984. The two men on that date were contemplating a burglary of the house of

Saben's prior employer. Defendant raised the question of whether Dannie Petty rather than Sowder was the robber of the Swift Shop.

After examining the record, we conclude the other evidence supporting defendant's conviction is not so overwhelming as to render Buchholz's hearsay testimony harmless beyond a reasonable doubt.

III. *Disposition.* Because reversible error occurred in admission of the Buchholz testimony, we affirm the decision of the court of appeals and reverse the judgment of the district court and remand the case for a new trial.

DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED.

All Justices concur except LARSON, J., who concurs specially.

LARSON, Justice (concurring specially).

While I agree this evidence should have been excluded on other grounds, I would not apply the "real purpose" test of *State v. Horn,* because of its purely subjective basis.