# IN THE SUPREME COURT OF IOWA

No. 17–1892

Filed June 7, 2019

**GREGORY HAWKINS,**

Appellee,

vs.

**GRINNELL REGIONAL MEDICAL CENTER, DAVID NESS,** and **DEBRA NOWACHEK,**

Appellants.

Appeal from the Iowa District Court for Poweshiek County, Randy S. DeGeest, Judge.

An employer and its agents appeal an adverse jury verdict in an employment discrimination and retaliation case. **REVERSED AND REMANDED.**

Randall D. Armentrout, Mary E. Funk, Debra Hulett, and David Bower of Nyemaster Goode, P.C., Des Moines, for appellants.

Katie Ervin Carlson, Nathan Borland, and Brooke Timmer of Timmer & Judkins, P.L.L.C., West Des Moines, for appellee.

Thomas M. Boes and Catherine M. Lucas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for amicus curiae Iowa Defense Counsel Association, Iowa Insurance Institute, and Iowa Association of Business and Industry.

Joel E. Fenton, Des Moines, for amicus curiae Iowa Association for Justice.

**WIGGINS, Justice.**

A terminated employee sued his former employer and the employer's agents under the Iowa Civil Rights Act (ICRA), alleging they discriminated against him because of his age and his disability—i.e., his status as a cancer patient—and retaliated against him due to his refusal to retire or quit. The case proceeded to trial, and a jury returned a verdict for the plaintiff, awarding him backpay and emotional distress damages. The district court awarded the plaintiff frontpay and attorney fees. The defendants appealed the verdict, raising various issues. We reverse and remand for a new trial.

## I. Background Facts.

Grinnell Regional Medical Center (GRMC) hired Gregory Hawkins as a laboratory technologist in 1976 when Hawkins was twenty-two-years old. In 1985, GRMC promoted Hawkins to laboratory director. As the laboratory director, Hawkins was accountable for daily operations of GRMC's laboratory, histology, and mobile services. Hawkins held this position until his termination on June 3, 2015. At all times relevant to this lawsuit, David Ness was GRMC's vice president of operations and Hawkins's direct supervisor and Debra Nowachek was GRMC's human resources director.

In November 2013, doctors diagnosed Hawkins with stage III breast cancer. On December 4, Hawkins underwent a left breast surgical mastectomy followed by chemotherapy and radiation treatments. During this time, Hawkins took family and medical leave pursuant to GRMC's family and medical leave policy and the Family and Medical Leave Act (FMLA). On March 19, 2014, while still undergoing weekly chemotherapy treatments, Hawkins returned to work part-time and used the remainder of his FMLA leave for partial-day absences through May 17. After he

exhausted his FMLA allowance, GRMC granted Hawkins extra leave pursuant to its policy, and Hawkins continued working part-time.

On June 2, Ness, Nowachek, and GRMC's chief executive officer, Todd Linden, met with Hawkins, who reported that his doctor instructed him to remain on a part-time schedule indefinitely. Linden told Hawkins GRMC needed someone in the laboratory full-time so GRMC would no longer be able to employ Hawkins as laboratory director. Linden asked Hawkins to resign within ninety days. Shortly after the meeting, Hawkins learned he would finish cancer treatments and be able to return to work full-time by December 2014. Hawkins emailed Ness to share this news, expressing that he wished to keep his job at GRMC and GRMC should not force him to resign. Ness forwarded the email to Nowachek and Linden, commenting, "He's going to make us term him."

On June 19, GRMC featured Hawkins in a public advertisement for chemotherapy services. That same day, Ness and Linden told Hawkins he had only thirty days left to resign or retire, otherwise GRMC would terminate him. Hawkins refused to resign or retire. Following this, GRMC's board of directors' executive committee met and decided to give Hawkins additional recovery time. On July 9, despite the board giving Hawkins extra recovery time, Ness and Nowachek forced Hawkins to take an unwanted leave of absence and appointed an interim laboratory director.

On October 6, Hawkins returned to GRMC full-time as the laboratory director. Three weeks before his return, on September 16, Hawkins emailed Ness, Nowachek, and Linden to confirm that he could return to work without any retaliation. From December 2014 through May 2015, GRMC reported performance issues with Hawkins's work.

On May 13, 2015, Hawkins filed a complaint with the Iowa Civil Rights Commission, alleging age discrimination, disability discrimination, and retaliation. On May 22, Ness emailed the GRMC board to discuss firing Hawkins. On June 3, three weeks after Hawkins filed his civil rights complaint, GRMC fired Hawkins.

**II. Proceedings.**

Hawkins filed his ICRA suit against GRMC, Ness, Nowachek, and Linden in district court on February 4, 2016.[1] He claimed GRMC discriminated against him because of his age and disability—i.e., his status as a cancer patient—and retaliated against him for refusing to resign. GRMC contended it did not terminate Hawkins for a discriminatory or retaliatory reason but rather because of his poor job performance.

The jury returned a verdict in Hawkins's favor on all claims against GRMC and awarded Hawkins $222,009.68 in backpay, $2,000,000 for past emotional distress, and $2,280,000 for future emotional distress.

On August 8, 2017, GRMC filed a motion for a new trial and remittitur of damages. On September 5, Hawkins moved for equitable relief and attorney fees. The district court denied GRMC's motion, granted Hawkins's motion, and awarded Hawkins $241,746 in frontpay through December 31, 2019, and $615,208 in attorney fees.

GRMC appeals. We will discuss other facts as needed.

**III. Issues.**

Although GRMC raises five issues on appeal, we need to address only the evidentiary hearsay challenge because that issue is dispositive. Nevertheless, we also address the challenge to the same-decision jury instruction because that issue may reoccur on retrial.

---

[1]Hawkins subsequently dismissed Linden as a defendant. For purposes of this decision, we will refer to all remaining defendants as GRMC.

#### IV. Whether the District Court Erred in Admitting Hearsay.

We generally review challenges to district court decisions to exclude or admit evidence for an abuse of discretion. *State v. Jordan*, 663 N.W.2d 877, 879 (Iowa 2003). However, we review challenges to hearsay and other evidence implicating the interpretation of a rule of evidence for correction of errors at law. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). We also apply this standard of correction of errors at law "to determin[e] whether statements come within an exception to the general prohibition on hearsay evidence." *Id.* Finally, unless the record shows the contrary, we presume improperly admitted hearsay evidence is prejudicial to the nonoffering party. *State v. Elliott*, 806 N.W.2d 660, 669 (Iowa 2011).

" 'Hearsay' means a statement that: (1) The declarant does not make while testifying at the current trial or hearing; and (2) A party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(*c*). We must analyze the purposes for which a party offers the alleged hearsay to determine if it is admissible. *State v. Sowder*, 394 N.W.2d 368, 371 (Iowa 1986); *State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979). We do not rely on the purpose urged by the party offering the alleged hearsay; rather we look at the true purpose for which the party offered the testimony. *Sowder*, 394 N.W.2d at 371. We make our determination on "an objective finding based on the facts and circumstances developed by the record." *Id.*

Hawkins introduced exhibit 173, which consisted of seventeen cards and notes he received from friends and former coworkers. Four notes were general well-wishes. One of the cards was a "Happy Boss's Day" card, signed by employees of the laboratory under Hawkins's supervision. Several other cards expressed happiness and gratitude to have worked alongside Hawkins at the laboratory.

At least four notes expressed disdain toward GRMC for its termination of Hawkins. One note read, "I was appalled to hear from Marge that you lost your job . . . you did not deserve this. I am so sorry this happened to you. Those responsible should be ashamed." Another note read, "I was in shock when Dr. J. B. Paulson told me of your release from GRMC. He was irate! I do not know or need to know the details – but it was an injustice." A third note read, "Just a note to let you know how sick we both were when we heard you were no longer at the hospital!! So disappointed to see and hear what is going on at GRMC!!" A fourth note read, "So proud to hear about your holding GRMC to account for their treatment of staff." A separate note stated GRMC had discriminated against Hawkins based on his age, reading, "I learned from Diane 2 weeks ago that the past 1–2 years have been tremendously difficult as you dealt with not only cancer but also age discrimination at work." Lastly, another note from what appears to be a former colleague of Hawkins read, "I wish you the best with this little mess, but I know you are doing the right thing not only for yourself but all of us."

Hawkins did not call any of these note authors to testify at trial. GRMC objected to exhibit 173's admissibility on the grounds of relevance and hearsay. Over this objection, the trial court admitted it.

Hawkins claims he offered exhibit 173 to rebut GRMC's evidence that he was incompetent, unresponsive, and an unmotivated manager and that the laboratory suffered because he failed to supervise employees properly. Thus, it appears the purpose of the notes and cards was to show GRMC's purported reasons for firing Hawkins were not true. GRMC's reasons for firing Hawkins are a central issue for the jury to decide in this case. Consequently, we find Hawkins offered many parts of exhibit 173 to prove the truth of the matter asserted in the notes and cards: that he was

competent, responsive, and a motivated manager and that he properly supervised the laboratory. Accordingly, we find the court erred in admitting exhibit 173.

Just because the court erred in admitting hearsay does not mean we automatically reverse the judgment. "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ." Iowa R. Evid. 5.103(*a*). When analyzing whether inadmissible hearsay requires reversal we start with the proposition that "admission of hearsay evidence over a proper objection is presumed to be prejudicial error unless the contrary is affirmatively established." *State v. Nims*, 357 N.W.2d 608, 609 (Iowa 1984) (en banc). "The contrary is affirmatively established if the record shows the hearsay evidence did not affect the jury's finding[s in its verdict]." *Elliott*, 806 N.W.2d at 669.

One way to establish the hearsay evidence did not have an impact on the jury's verdict is to show there was overwhelming evidence on the issue for which the hearsay was introduced, making the prejudicial impact of the hearsay evidence insignificant. *State v. Hallum*, 585 N.W.2d 249, 256 (Iowa 1998) (overwhelming evidence of the defendant's guilt, making the prejudicial impact of the hearsay evidence insignificant), *vacated on other grounds*, 527 U.S. 1001, 1001, 119 S. Ct. 2335, 2335 (1999). Here, there was substantial evidence presented by both sides as to why GRMC fired Hawkins. Thus, we cannot find the record overwhelmingly established GRMC fired Hawkins because of his age or disability or in retaliation.

Another way to demonstrate the hearsay evidence did not have an impact on the jury's verdict is to show the hearsay evidence was merely cumulative. *Elliott*, 806 N.W.2d at 669. "If the record contains cumulative

evidence in the form of testimony, the hearsay testimony's trustworthiness must overcome the presumption of prejudice." *Id.*

Here, Hawkins had at least six employees of GRMC testify to the same matters contained in exhibit 173. These witnesses corroborated that Hawkins was competent, responsive, and a motivated manager and that he properly supervised the laboratory. But this in and of itself does not establish the wrongfully admitted hearsay was merely cumulative.

Exhibit 173 contained statements in addition to those saying Hawkins was competent, responsive, and a motivated manager and that he properly supervised the laboratory. Other statements contained in exhibit 173 urged GRMC should be held responsible for Hawkins losing his job and correct the injustice it created by firing Hawkins. Statements in exhibit 173 also indicated Hawkins was doing the right thing for the staff at GRMC by holding GRMC responsible for its actions against Hawkins. Finally, some statements in exhibit 173 opined that GRMC committed discrimination against Hawkins because of his age and cancer.

These types of statements were not cumulative of the evidence in the record relating to the purpose for which the hearsay statements were offered. They went well beyond establishing that Hawkins was competent, responsive, and a motivated manager and that he properly supervised the laboratory. These statements were in the record without any foundation and not subject to the test of cross-examination. The statements were inflammatory and prejudicial. *See Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 183–84 (Iowa 2004) (finding similar hearsay evidence "inflammatory and clearly prejudicial").

Additionally, we note this evidence went to the primary issue in this case—why GRMC fired Hawkins. *See id.* at 184 (noting hearsay evidence at issue directly addressed a central issue in the case). When inadmissible

hearsay evidence directly addresses a hotly contested central dispute of the parties, it is harder for us to find the evidence nonprejudicial. *See, e.g.*, *Madison v. Colby*, 348 N.W.2d 202, 204 (Iowa 1984) (en banc) (finding erroneously admitted hearsay was prejudicial when it related to disputed significant issues). Thus, we find the court's erroneous admission of hearsay evidence affected a substantial right of GRMC.

Because the record failed to rebut the presumption of prejudice associated with the admitted hearsay evidence, we reverse and remand for a new trial. *See Gacke*, 684 N.W.2d at 184 (granting a new trial based on erroneous and prejudicial admission of hearsay).

### V. Issue That May Occur on Retrial.

Although we find GRMC's hearsay evidentiary challenge dispositive on this appeal, we also elect to address the district court's refusal to submit GRMC's requested same-decision jury instruction because this issue may occur on retrial. *See, e.g.*, *Krogmann v. State*, 914 N.W.2d 293, 325 (Iowa 2018) (addressing nondispositive issue that may occur on retrial).

**A. The *McDonnell Douglas* Test.** The Supreme Court formulated the *McDonnell Douglas* test in 1973. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973). In a Title VII employment discrimination case, the employee must show a prima facie case of discrimination. *Id.* at 802, 93 S. Ct. at 1824. The burden then shifts to the employer to show a legitimate, nondiscriminatory reason for the employer's action. *Id.* If the employer shows a legitimate, nondiscriminatory reason for its action, the burden shifts back to the employee to show the reason for the employer's action was pretexual. *Id.* at 804, 93 S. Ct. at 1825.

**B. The *Price Waterhouse* Test.** In 1989, the Supreme Court adopted the same-decision framework in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S. Ct. 1775, 1795 (1989) (plurality opinion), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, § 107(a), 105 Stat. 1071, 1075 (codified at 42 U.S.C. § 2000e–2(m) (2012)); *id.* at 259–60, 109 S. Ct. at 1795–96 (White, J., concurring in the judgment); *id.* at 261, 279, 109 S. Ct. at 1796, 1806 (O'Connor, J., concurring in the judgment). The case established that when a Title VII plaintiff proves that a discriminatory factor played a motivating part in the employer's decision (i.e., there were mixed motives), the employer may avoid liability by presenting evidence that it would have made the same decision in the absence of the discriminatory motive. *Id.* at 258, 109 S. Ct. at 1795 (plurality opinion); *id.* at 259–60, 109 S. Ct. at 1795–96 (White, J., concurring in the judgment); *id.* at 261, 279, 109 S. Ct. at 1796, 1806 (O'Connor, J., concurring in the judgment).

Two years after *Price Waterhouse*, Congress enacted the Civil Rights Act of 1991, which modified Title VII by codifying the motivating-factor standard and same-decision framework adopted by the Supreme Court in *Price Waterhouse*. Civil Rights Act of 1991 § 107, 105 Stat. at 1075–76 (codified as amended as 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)(B)). Under § 2000e–2(m), a complaining party establishes an illegal employment practice when it "demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m).

Notably, Congress amended the statute to not only prohibit discrimination in employment "*because of* [an] individual's race, color, religion, sex, or national origin," *e.g.*, 42 U.S.C. § 2000e–2(a) (1988) (emphasis added), but also to prohibit employment practices where "race,

color, religion, sex, or national origin was a *motivating factor,*" 42 U.S.C. § 2000e–2(m) (2012) (emphasis added). *Compare id.* § 2000e–2, *with* 42 U.S.C. § 2000e–2 (1988). The purpose, as stated by Congress, was to "provide additional protection against unlawful discrimination in employment." Civil Rights Act of 1991 § 2(3), 105 Stat. at 1071 (codified at 42 U.S.C. § 1981 note (2012) (Congressional Findings)).

Section 2000e–5(g)(2)(B) provides,

> (B) On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>
>> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and
>>
>> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment . . . .

42 U.S.C. § 2000e–5(g)(2)(B).

**C. Proper Analysis Under Iowa Law.** Our analysis begins by examining the text of the statute. Iowa Code section 216.6(1)(*a*) forbids discriminatory employment practices based on a protected characteristic, while section 216.11(2) forbids discriminatory and retaliatory employment practices because the employee engaged in a protected activity. Iowa Code §§ 216.6(1)(*a*), .11(2) (2015). The ICRA, in relevant part, states,

> It shall be an unfair or discriminatory practice for any:
>
>> *a.* Person to . . . discharge any employee, or to otherwise discriminate in employment against . . . any employee because of the age . . . or disability of such . . . employee . . . .

*Id.* § 216.6(1)(*a*).  The ICRA further states,

> It shall be an unfair or discriminatory practice for:
>
> . . . .
>
> 2. Any person to discriminate or retaliate against another person . . . because such person has lawfully opposed any practice forbidden under this chapter . . . or has filed a complaint . . . under this chapter.

*Id.* § 216.11(2).

In interpreting our civil rights statute, we have looked at the similarities between the language used in the federal and our civil rights acts.  *See, e.g.*, *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 571–72 (Iowa 2017); *DeBoom v. Raining Rose, Inc.*, 772 N.W.2d 1, 7 (Iowa 2009).  But we should also be inclined to consider the differences. *See, e.g.*, *Haskenhoff*, 897 N.W.2d at 635 (Appel, J., concurring in part and dissenting in part) (joined by Chief Justice Cady, and Justices Wiggins and Hecht); *see also Simon Seeding & Sod, Inc. v. Dubuque Human Rights Comm'n*, 895 N.W.2d 446, 464 (Iowa 2017) ("We will not add a requirement to a statute that the legislature chose to omit."); *Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 210 (Iowa 2014) ("[L]egislative intent is expressed by what the legislature has said, not what it could or might have said. . . .  Intent may be expressed by the omission, as well as the inclusion, of statutory terms." (quoting *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001))).

The ICRA does not contain language similar to Title VII's that allows an employer the opportunity to demonstrate it would have made the same decision "in the absence of the impermissible motivating factor." *Compare* 42 U.S.C. § 2000e–5(g)(2)(B), *with* Iowa Code ch. 216.  The Iowa legislature

has amended the ICRA multiple times since 1991.[2]  It could have amended the ICRA to reflect the same changes that Congress chose to make, including the provisions incorporating the Supreme Court's interpretation of Title VII as including a same-decision defense.  *See* 42 U.S.C. § 2000e–5(g)(2)(B); *Price Waterhouse*, 490 U.S. at 258, 109 S. Ct. at 1795 (plurality opinion); *id.* at 259–60, 109 S. Ct. at 1795–96 (White, J., concurring in the judgment); *id.* at 261, 279, 109 S. Ct. at 1796, 1806 (O'Connor, J., concurring in the judgment).  It chose not to do so.

In *DeBoom*, we discussed the burden on plaintiffs who bring claims under the ICRA.  *See* 772 N.W.2d at 12–13.  We said a plaintiff "need only demonstrate 'termination occurred under circumstances giving rise to an inference of discrimination' and his or her status as a member of a protected class was *a* determining factor in the decision to terminate employment."  *Id.* at 13 (quoting *Smidt v. Porter*, 695 N.W.2d 9, 14 (Iowa 2005)).  We discussed that the term *a determining factor* is better stated as *a motivating factor* because *a determining factor* indicates a higher burden for the plaintiff, which "is not required by either the Iowa Civil Rights Act or case law."  *Id.* at 13–14.

Though we have interpreted the "because of" language in the ICRA as requiring the plaintiff to show protected status as a motivating factor, we have not interpreted the language as alleviating liability from an employer that engages in the prohibited conduct but demonstrates it would have made the same decision in the absence of the impermissible

---

[2]For instance, it added sexual orientation and gender identity as protected bases in 2007 and wage discrimination as a prohibited action in 2009.  *See* 2009 Iowa Acts ch. 96 (codified as amended at Iowa Code §§ 216.2(15), .6A, .15(9)(*a*)(9)); 2007 Iowa Acts ch. 191 (codified as amended throughout scattered sections of Iowa Code ch. 216).  *See generally* Iowa Civil Rights Comm'n, *Civil Rights: Celebrating 50 Years of Higher Quality Through Equality* 4 (2015), https://icrc.iowa.gov/sites/default/files/publications/2016/Civil%20Rights%20Toolkit%20updated.pdf.

motivating factor. *See Haskenhoff*, 897 N.W.2d at 635; *DeBoom*, 772 N.W.2d at 5–6, 12–14.

We have mentioned the same-decision defense in dicta. *See McQuistion v. City of Clinton*, 872 N.W.2d 817, 828 n.4 (Iowa 2015) ("[T]he employer has a chance to prove the same decision would have been made without the discriminatory motive."); *Boelman v. Manson State Bank*, 522 N.W.2d 73, 78 (Iowa 1994) ("Once the employee proves a mixed motive, the burden of proof shifts to the employer to show that it would have made the same decision in the absence of the discriminatory motive."); *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 894 (Iowa 1990) ("[T]he employer has the burden of proving by a preponderance of the evidence that it would have made the same decision even if it had not considered the improper factor.").[3] In none of those cases did we actually apply the same-decision defense.

We also look to the purpose of the statute to determine legislative intent. *See State v. Allen*, 708 N.W.2d 361, 366 (Iowa 2006). The purpose of the ICRA is " 'to eliminate unfair and discriminatory practices in . . . employment' and 'correct a broad pattern of behavior rather than merely affording a procedure to settle a specific dispute.' " *Cote v. Derby Ins. Agency, Inc.*, 908 N.W.2d 861, 865 (Iowa 2018) (quoting *Simon Seeding & Sod*, 895 N.W.2d at 462). We are to construe the chapter broadly to effectuate its purposes. Iowa Code § 216.18(1). Title VII contains no

---

[3]That we mentioned the same-decision defense in these cases could be seen as an endorsement of the defense. However, that we never actually applied the defense under the ICRA is telling. The same-decision defense instruction was apparently given in *Rivera v. Woodward Resource Center*, but we declined to reach the issue on appeal because error was not preserved. 865 N.W.2d 887, 892 (Iowa 2015). That case was a wrongful-discharge-in-violation-of-public-policy case, not a case brought under the ICRA. *Id.* at 889.

similar language. *Pippen v. State*, 854 N.W.2d 1, 28 (Iowa 2014). As we said in *Pippen*,

> An Iowa court faced with competing legal interpretations of the Iowa Civil Rights Act must keep in mind the legislative direction of broadly interpreting the Act when choosing among plausible legal alternatives. Any state court decision that adopts a narrow construction of Title VII by the United States Supreme Court without confronting the requirement in Iowa law that the Iowa Civil Rights Act be interpreted broadly misses an essential difference in state and federal civil rights laws.

*Id.*

Further, "[r]ecognition of the independent character of state civil rights statutes is particularly important when Congress passes legislation designed to overcome decisions of the United States Supreme Court narrowly interpreting civil rights statutes." *Id.* at 29. In sum, while federal courts' interpretations of the federal civil rights statute are illustrative and instructive, we are by no means bound by their construction when interpreting the ICRA. *See Hubbard v. State*, 163 N.W.2d 904, 909 (Iowa 1969).

We look also to other jurisdictions for guidance in interpreting the ICRA. *See id.* States have taken different approaches in their interpretations. Minnesota, for instance, applies the *McDonnell Douglas* analysis to all cases, even mixed-motive cases, not the *Price Waterhouse* analysis. *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 626 (Minn. 1988) (en banc). While the Minnesota Supreme Court considered the issue before *Price Waterhouse*, it still used the *McDonnell Douglas* test in later cases. *See, e.g., Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001) (en banc). Kentucky, too, does not distinguish between mixed-motive and single-motive cases. *See,*

*e.g.*, *Mendez v. Univ. of Ky. Bd. of Trs.*, 357 S.W.3d 534, 539–43 (Ky. Ct. App. 2011).

Alaska has adopted the same-decision instruction in mixed-motive cases. *See Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 433–34 (Alaska 2004). The Alaska Supreme Court explained,

> In cases where there is direct evidence of discrimination, we . . . apply a mixed-motive analysis, which recognizes that discriminatory employment decisions may not be motivated solely by a prohibited characteristic such as race or sex, but may be "based on a mixture of legitimate and illegitimate considerations."

*Id.* at 434 (quoting *Era Aviation, Inc. v. Lindfors*, 17 P.3d 40, 44 (Alaska 2000), *superseded by regulation on other grounds*, 29 C.F.R. § 541.301(d) (2004), *as recognized by Moody v. Royal Wolf Lodge*, 339 P.3d 636, 640–42 (Alaska 2014)). Texas also has adopted the same-decision-defense instruction for mixed-motive cases. *See Reber v. Bell Helicopter Textron, Inc.*, 248 S.W.3d 853, 858–59 (Tex. App. 2008). However, Texas's statute closely mirrors the Federal Title VII, with specific language stating,

> In a complaint in which a complainant proves a violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court may grant . . . attorney's fees and costs . . . but may not award damages.

*Id.* at 857 (alterations in original) (quoting Tex. Lab. Code Ann. § 21.125(b) (Vernon 2006)).

In Iowa, we have taken the first step and adopted the motivating-factor standard under our statutes rather than the determining-factor standard. *Haskenhoff*, 897 N.W.2d at 634, 637; *DeBoom*, 772 N.W.2d at 13. The motivating-factor standard is a lower standard than the determining-factor standard. *DeBoom*, 772 N.W.2d at 13. Prior to Congress amending the federal civil rights statute, the Supreme Court

decided that when the employee gets the motivating-factor standard for causation, it is only fair to allow the employer an affirmative defense. *Price Waterhouse*, 490 U.S. at 244–45, 109 S. Ct. at 1787–88 (plurality opinion). Thus, when an employee proves discrimination was a motivating factor in the employer's actions, the employer could avoid liability "by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender [or other protected characteristics] into account." *Id.* at 258, 109 S. Ct. at 1795.

Although we have said it only in dicta, we believe that under the ICRA an employer should be entitled to the same-decision affirmative defense because we have adopted the motivating-factor test for causation in ICRA discrimination cases. This will allow an employer to avoid damages liability when the employee proves by a preponderance of the evidence that the discrimination was a motivating factor in the employer's actions.

Therefore, in discrimination and retaliation cases under ICRA, we apply the *Price Waterhouse* motivating-factor standard in instructing the jury and the defendant is entitled to an instruction on the same-decision defense recognized in *Price Waterhouse* if properly pled and proved. *See* Iowa R. Civ. P. 1.421 ("Every defense to a claim for relief in any pleading must be asserted in the pleading responsive thereto, or in an amendment to the answer made within 20 days after service of the answer, or if no responsive pleading is required, then at trial."). To clarify, we no longer rely on the *McDonnell Douglas* burden-shifting analysis and determinating-factor standard when instructing the jury.

**VI. Conclusion.**

We find the district court erred in admitting hearsay and the hearsay was not harmless. Accordingly, we reverse the judgment of the district

court and remand for a new trial.  Upon retrial, the court should instruct the jury in accord with this opinion.

**REVERSED AND REMANDED.**