# IN THE COURT OF APPEALS OF IOWA

No. 23-0434
Filed August 21, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JASON MICHAEL PIRIE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Greene County, Joseph McCarville,

Judge.

The defendant challenges his conviction and sentence for third-degree

theft. **AFFIRMED.**

Leah Patton of Patton Legal Services, LLC, Ames, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Buller, P.J., Bower, S.J.,* and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**PER CURIAM.**

Jason Pirie challenges his conviction and sentence for third-degree theft, an aggravated misdemeanor. He argues (1) the judge should have granted his motion to recuse based on the judge's prior representation of Pirie in two criminal matters and a recent statement made by the judge that raised a question regarding his impartiality; (2) the district court erred in allowing hearsay testimony from a police officer during the criminal trial; (3) the district court should have granted his motion for new trial based on the unavailability of a material witness; (4) the district court violated his rights by conducting a remote sentencing proceeding without first obtaining his waiver of the right to in-person sentencing; and (5) the district court abused its discretion by sentencing him to a consecutive prison term for the crime of stealing $55 worth of alcohol.

**I. Background Facts and Proceedings.**

Pirie was charged by trial information with third-degree theft for taking property not exceeding $750 while having two prior theft convictions. *See* Iowa Code § 714.2(3) (2022). It was alleged that Pirie stole a bottle of Patrón tequila that retailed for $54.99 (before tax) from a local grocery store. Pirie pled not guilty, and the case was set for a jury trial to begin on January 24, 2023.

Six days before trial was scheduled to start, Pirie filed a motion asking the judge to recuse himself. The district court heard the motion the same day. Pirie testified, stating that the judge represented him in criminal matters in 2016 and 2005—before being appointed to the bench. Pirie was asked why he believed that impacted the judge's ability to be impartial; he responded: "Just a comment that [the judge] made to [Pirie's attorney] a year ago when I pled guilty to this case, to

this charge I'm on probation on right now." Pirie was told the judge said it was a "good thing [he] took the deal because [the judge] knows [him] and it wasn't going to be good." The judge orally denied the motion from the bench, noting the motion was filed "essentially on the eve" of trial. The judge continued:

> I don't think I have a conflict. I'm not denying I said something along the lines of it's a good thing he took the deal. I don't think that shows bias. I think it shows that apparently he got a good deal. And it also—I don't recall the specifics, but it may also show that the defense [a]ttorney . . . did a good job for Mr. Pirie because in my view of the case, possibly I would have granted him a harsher sentence not because of any prior representation, but because of the facts of that particular case.

Pirie's case was tried to a jury on January 24, 2023.

The State presented evidence that a local grocery store called the police after realizing there was a bottle of silver Patrón tequila that went missing without being paid for on August 3, 2022. A manager from the grocery store reviewed videos from security cameras in and around the store before ultimately turning over copies of the footage to the police. Multiple videos and still images from the footage were admitted at trial and shown to the jury. The videos showed a person alleged to be Pirie in the liquor section of the store carrying an item with bright green packaging—which the manager testified was consistent with that of the missing tequila—before putting it down on a shelf, manipulating the packaging, and then briefly walking away. When Pirie returned a few seconds later, he made a grab for the shelf and then seemed to place something under his shirt. The manager testified that he tracked Pirie on the various cameras around the store and that Pirie exited the store without ever going through a check out. While a still image showed Pirie exiting the store by himself without anything in his hands, a

video of Pirie in the parking lot showed him holding an item in his right hand. Eventually, Pirie and two other men—Jason and Cody—left the parking lot in a red car. During cross-examination, Pirie's attorney pointed out that Cody did make purchases and leave with a shopping bag, and the grocery store employee was unable to tell the jury what Cody purchased.

Officer Nick Johnson testified that, on August 4, he came across Pirie, Cody, and Jason after responding to the grocery store's call. One of the two men was wearing the same shirt as the day before, and they appeared to be driving the same red car as was seen on the grocery store surveillance cameras. During Officer Johnson's testimony, the prosecutor asked if the two men with Pirie provided Officer Johnson "with different versions of events." Pirie objected, arguing the question called for inadmissible hearsay. Then the following exchange took place between the prosecutor and Officer Johnson:

> Q. So you interviewed [Cody and Jason]; is that right? A. Yes, ma'am.
> Q. And they—and you asked them about their presence the day before; is that right? A. Yes, ma'am.
> Q. Did they provide you with consistent versions of events? A. Yes, ma'am.
> Q. Did you then interview the [d]efendant? A. Yes, ma'am.
> Q. Did the [d]efendant tell you where he was the day before? A. No, ma'am.
> Q. Did he deny being at [the grocery store] the day before? A. Yes, ma'am.
> Q. Was his statement consistent or inconsistent with the version of events provided to you by [the other two men]? A. Inconsistent.

Pirie then lodged another objection, arguing that the prosecutor was "trying to use that as a way to show an inconsistency with [Pirie] in this particular matter by saying that this is testimony that they gave and that is a true statement." Defense

counsel continued, "I don't have the opportunity to cross examine either of these two witnesses here today and that would become a hearsay." The district court again overruled the objection.

The jury found Pirie guilty of theft, and he stipulated to prior two theft convictions.[1]

Pirie filed a motion for new trial, asserting that a material witness who could not be located and subpoenaed before trial was now available.

The district court held the combined hearing on the motion for new trial and sentencing remotely. The court also conducted a probation revocation hearing.[2] The court indicated it was doing so because the judge tested positive for COVID-19. Pirie testified at the hearing that he wanted Jason to testify on his behalf at trial, stating he was a "key witness that was supposed to be there." According to Pirie, the State subpoenaed Jason, and Pirie found him the night before trial and "attempted to try to get him to attend" trial. Noting Pirie did not subpoena Jason and did not ask for a continuance or any other remedy before the jury returned with a verdict, the court orally denied Pirie's motion for new trial. After hearing from both sides and giving Pirie a chance to speak on his own behalf, the court sentenced Pirie to a prison term not to exceed two years. It ordered Pirie to serve the sentence consecutive to his probation-revocation sentence of 180 days in jail

---

[1] Under section 714.2, "[T]he theft of any property not exceeding seven hundred fifty dollars in value by one who has before been twice convicted of theft[] is theft in the third degree. Theft in the third degree is an aggravated misdemeanor."

[2] We note that the judge's statements that Pirie relied on as the basis of his recusal motion were about this probation-revocation case and the judge recognized that his "only possible bias or prejudice that could be present in that situation would be—would come up at sentencing." Pirie did not renew his motion for recusal, and we review the district court's ruling on the motion at the time it was made.

"because they are separate and distinct crimes. The theft was committed when [Pirie] was on probation in AGCR. Also, [he] is a habitual felon, has a long criminal history. The Court imposes this sentence because it provides for [his] rehabilitation and the protection for the community." Pirie appeals.

## II. Discussion.

### A. Motion to Recuse.

Pirie maintains the trial court judge should have recused himself. "We review a judge's decision on a motion to recuse for abuse of discretion." *State v. Trane*, 984 N.W.2d 429, 433 (Iowa 2023) (citation omitted). "The court abuses its discretion when its decision is based on untenable grounds or it has acted unreasonably." *Id.* at 434 (citation omitted).

The Iowa Code of Judicial Conduct sets out standards for recusal. Under those rules, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."[3] Iowa Code of Judicial Conduct R. 51:2.11(A). Impartiality is the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Iowa Code of Judicial Conduct, Terminology. Pirie, as the party seeking recusal, bears the burden to show actual prejudice; speculation is not enough. *See State v. Biddle*, 652 N.W.2d 191, 198 (Iowa 2002). "To constitute prejudice necessitating a different judge, the alleged bias and prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the

---

[3] "The term 'recusal' is used interchangeably with the term 'disqualification.'" Iowa Code of Judicial Conduct R. 51:2.11 cmt. 1.

judge learned from participation in the case." *State v. Bear*, 452 N.W.2d 430, 435 (Iowa 1990).

"A judge's impartiality might be questioned when the judge 'has a personal bias or prejudice concerning a party.'" *Trane*, 984 N.W.2d at 434 (citation omitted); *accord* Iowa Code § 602.1606(1)(a) (2023). "But '[o]nly personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor.'" *Trane*, 984 N.W.2d at 434 (quoting *State v. Milsap*, 704 N.W.2d 426, 432 (Iowa 2005)). And "evidence presented in the trial of a prior cause, or definite views on the law, create no personal bias since they do not stem from an extrajudicial source." *State v. Smith*, 242 N.W.2d 320, 324 (Iowa 1976); *see also United States v. Mitchell*, 377 F. Supp. 1312, 1316 (D.C. Cir. 1974) ("[A]ny bias must be personal, that is, have its origin 'in sources beyond the four corners of the courtroom.'" (citation omitted)).

Here, we cannot say Pirie has shown actual prejudice requiring the judge to recuse himself. In arguing the judge abused his discretion in denying the motion to recuse, Pirie continues to rely on his own testimony of what he was told the judge said—that it was a "good thing [Pirie] took the deal [in a prior case] because [the judge] knows [him] and it wasn't going to be good." But while admitting he made a comment about it being a good thing Pirie took the deal, the judge indicated his comment was in reference to the fact that Pirie "got a good deal" and "possibly I would have granted him a harsher sentence not because of any prior representation, but because of the facts of that particular case." This distinction is not without significance; the judge's comments were about the benefit Pirie received in that specific case as opposed to the judge's personal feelings about

Pirie or a statement suggesting vindictiveness. Additionally, as the judge explained it, there was no focus on any prior knowledge of or information about Pirie, let alone a statement of bias or prejudice against him. *See State v. Toles*, 885 N.W.2d 407, 408 (Iowa 2016) (affirming court of appeals ruling that sentencing judge who may have previously prosecuted the defendant was not required to recuse himself when judge's statements "merely revealed that he had a level of familiarity with [the defendant] and did not reveal bias or prejudice against him").

But even if we credited Pirie's version of the judge's statement, there is no suggestion that any information the judge previously learned about Pirie was extrajudicial. *See State v. Pearson*, No. 04-1285, 2005 WL 975641, at *2 (Iowa Ct. App. April 28, 2005) ("Even if we accept as true Pearson's claim that the sentencing judge formerly represented Pearson or that his attorney knew of that relationship, his recusal theory fails. There is nothing in the record indicating that the sentencing judge had any prior knowledge of the matter for which Pearson was to be sentenced."). And "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S 540, 555 (1994). The record is devoid of any information the judge learned during his representation of Pirie years before that would have any bearing on this case. To the contrary, the judge's statement refers to prior judicial proceedings.

We apply an objective test to determine whether a judge's impartiality might reasonably be questioned. *See State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994)

(discussing that we apply a "reasonable person" test to determine whether recusal is necessary because "[e]ven a judge who is unaware of disqualifying factors may be expected to recuse" since "people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges" and the disqualification rules "were enacted to meet this problem and to promote public confidence in the integrity of the judicial process" (citation omitted)).  But we also consider the judge's stated reasons for refusing to recuse.  In *Trane*, the court said, "We note also that the judge issued a written order explaining his reasons for declining to recuse.  In that order, we find no reasons to think that the court's decision was 'based on untenable grounds' or that the court 'acted unreasonably.'" 984 N.W.2d at 434.  The same is true here.  In his ruling denying the motion to recuse, the judge explained, "possibly I would have granted him a harsher sentence not because of any prior representation, but because of the facts of that particular case."  We cannot say the district court judge abused his discretion in denying the motion to recuse.

**B. Hearsay.**

Pirie challenges the district court's denial of his hearsay objection regarding Officer Johnson's testimony.  We review hearsay claims for correction of errors at law.  *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021).

Pirie argues that the State was allowed to elicit indirect or implicit hearsay regarding the content of Jason and Cody's statements to Officer Johnson—specifically, that they both admitted to being at the grocery store the previous day. *See State v. Judkins*, 242 N.W.2d 266, 268 (Iowa 1976) (recognizing it was error to allow the State's expert to testify that his opinion "had been confirmed" by the

defense's expert because it circumvented the hearsay rule by allowing the State to indirectly provide evidence of the defense expert's opinion).

We recognize "[t]he rule prohibiting hearsay evidence only forbids an out-of-court statement used 'to prove the truth of the matter asserted in the statement.'" *Dessinger*, 958 N.W.2d at 603. But the State argues the statements of Jason and Cody were not offered to prove the truth of the matter asserted. Instead, the State contends the prosecutor did not offer the substance of Jason and Cody's statements and, whatever the statements were, they were only offered to show they were consistent with each other and inconsistent with Pirie's denial that he was at the grocery store the day before.

Although we tend to think the statements were offered for a purpose other than the truth of the matter asserted, we assume without deciding the statements were hearsay and rest our holding on finding any error was harmless. "When hearsay evidence is wrongly admitted we presume 'it is prejudicial to the nonoffering party unless otherwise established.' One way the State can overcome this presumption is through overwhelming evidence of the defendant's guilt." *State v. Skahill*, 966 N.W.2d 1, 15 (Iowa 2021) (citations omitted). We conclude there was overwhelming evidence of guilt here.

The grocery store manager testified there was one missing bottle of silver Patrón tequila that was unpaid for on August 3. Surveillance videos from the store showed an individual alleged to be Pirie in the liquor section carrying an item in bright green packaging consistent with that of the missing tequila. After he messed with the packaging for a while, he checked around the other aisles, and then returned to the same spot. The surveillance video shows Pirie putting his hand

into the shelf and then withdrawing it, apparently holding on to something—possibly a bottle—as he angles his body away from the camera and raises the front of his shirt. Pirie then seemed to put something under his clothing, but his back was to the camera so the video does not show what it was. Pirie exited the store without anything in his hands and without any apparent bulge in his clothing. But a short time later, a parking lot camera captured him holding an item resembling a clear bottle in his right hand. And the manager testified that he tracked Pirie through the store on video surveillance and Pirie did not go through any checkouts or make any purchases before leaving. Cody did make purchases, and the store manager could not produce a receipt of Cody's purchases or a surveillance video of the checkout line showing what Cody purchased. The manager could not rule out the possibility that Cody purchased a bottle of Patrón although he was never observed on video surveillance of the liquor section. But the manager testified that in his review of the surveillance videos of the parking lot, Pirie did not end up with the other two men until they were all back at the car—after he was seen in the parking lot with the item in his hand—so there is no evidence Cody transferred a bottle to Pirie in the parking lot. In the face of this evidence, it was harmless error for the district court to allow testimony that Cory and Jason admitted they were at the grocery store on August 3.

**C. Motion for New Trial.**

Pirie maintains the district court should have granted his motion for new trial due to the unavailability of a material witness. He relies on Iowa Rule of Criminal Procedure 2.24(2)(b)(9), which broadly allows the court to grant a new trial "[w]hen from any other cause the defendant has not received a fair and impartial trial."

But Pirie did not alert the court he was having an issue subpoenaing Jason and did not request a continuance or any other potential remedy. Instead, Pirie first complained to the district court about wanting to call Jason as a witness in his motion for new trial—after the jury rendered a guilty verdict. This is too late to preserve error and obtain relief. *See State v. Seltzer*, 288 N.W.2d 557, 559 (Iowa 1980) ("Objections should be raised at the earliest time at which error became apparent in order to properly preserve error. Motion for new trial ordinarily is not sufficient to preserve error where proper objections were not made at trial." (internal citation omitted)); *see also State v. Newman*, 326 N.W.2d 788, 793 (Iowa 1982) ("This issue was first raised in defendant's motion for new trial. His complaint came too late, and therefore consider it waived.").

We do not consider this issue further.

**D. Remote Sentencing Proceeding.**

Next, Pirie challenges the district court's use of remote proceedings for sentencing without the parties' consent and without first obtaining his waiver of in-person sentencing. He relies on the supervisory order of the Iowa Supreme Court in effect at the time of his March 1, 2023 sentencing, which stated: "All contested court proceedings are presumed to occur in person. A contested testimonial proceeding may occur by videoconference or telephone only with the consent of all parties and in the court's discretion." Iowa Supreme Ct. Supervisor Order, *In the Matter of Remote Judicial Proceedings* (Nov. 4, 2022). And Pirie points to Iowa Rule of Criminal Procedure 2.23(3)(d), asserting it codifies his constitutional right to be personally present for sentencing.

The State counters, arguing Pirie failed to preserve error because he did not raise the issue regarding remote proceedings to the district court. While Pirie maintained error preservation is not required for sentencing, the State contends that because Pirie's "claim is that the error occurred in the proceedings prior to imposition of sentence . . . the normal rules of error preservation apply." *State v. Gordon*, 921 N.W.2d 19, 23 (Iowa 2018).

We agree with the State. Pirie did not raise this issue before the district court in any fashion, and our case law is clear that appellate challenges concerning procedural sentencing defects must be preserved below. "[A] claim of procedural error is not a claim of illegal sentence, and therefore, it is precluded by our normal error-preservation rules." *Tindell v. State*, 629 N.W.2d 357, 360 (Iowa 2001). As the supreme court recognized in *Tindell*, the drafters of our rules of criminal procedure made an express choice to not allow procedural challenges at any time and to hold otherwise "would open up a virtual Pandora's box of complaints with no statutorily prescribed procedures for their disposition nor any time limits for their implementation." *Id.* The holding of *Gordon* is clear—and it is not isolated:

> Gordon is not claiming his sentence is intrinsically unconstitutional. If this were the case, he would not need to preserve error for us to decide the issue on appeal. Rather, his claim is that the use of the risk assessment tools violates his due process rights. There are distinctions between claiming the sentence is intrinsically unconstitutional and claiming errors in the proceedings prior to imposition of sentence. Gordon's claim is that the error occurred in the proceedings prior to imposition of sentence. Because Gordon's claim does not involve the inherent power of the court to sentence him for his crime, the normal rules of error preservation apply.

921 N.W.2d at 23 (citations omitted).

Just like in *Gordon*, Pirie is "not claiming his sentence is intrinsically unconstitutional" but instead "claiming errors in the proceedings prior to imposition of sentence." *See id.* And Pirie, like Gordon, was required to object below because "the normal rules of error preservation apply." *See id.*

Perhaps most telling about *Gordon*'s application to this case is how Pirie deals with it in his reply brief. The only case law Pirie marshals to distinguish this case from *Gordon* is a 1994 decision from our court: *State v. Thomas*, 520 N.W.2d 311, 313 (Iowa Ct. App. 1994). But the portion of *Thomas* quoted by Pirie—the broad statement that a "procedurally defective sentence" is an exception to the rules of error preservation—is not entirely good law, as it is irreconcilable with *Tindell* (decided by the supreme court seven years later). *See Tindell*, 629 N.W.2d 359 ("[The rules of criminal procedure], and our cases, allow challenges to *illegal* sentences at any time, but they do not allow challenges to sentences that, because of procedural errors, are illegally *imposed*.").

The dissent's reference to cases from our court does not justify its deviation from controlling precedent. Even if our unpublished decision in *State v. Allen* is correct, it concerned an entirely different situation than here—waiver of preparing a presentence investigation report containing a validated risk assessment, when preparation of both is required by statute or rule. No. 22-0152, 2023 WL 8069210, at *2–3 (Iowa Ct. App. Nov. 21, 2023). And in the two on-point cases—*Roe* and *Emanuel*—the State did not contest error preservation. *See State v. Emanuel*, 967 N.W.2d 63, 69 (Iowa Ct. App. 2021); *State v. Roe*, No. 21-0457, 2022 WL 2824732, at *5–6 (Iowa Ct. App. July 20, 2022). The State expressly contests error-preservation here, relying on the controlling language in *Gordon*.

There are also practical reasons to require error preservation on challenges to procedural sentencing defects. It is very possible—perhaps very likely—that the parties had an off-the-record discussion about whether to proceed with sentencing remotely or continue it for a later in-person hearing, given the judge's COVID-19diagnosis. If Pirie was required to develop this issue through an ineffective-assistance claim in postconviction relief, those discussions could come to light; the same cannot be said of the dissent bypassing the error-preservation rules to decide this issue on a limited record. While the better practice for the district court would undoubtedly have been to establish formal waiver on the record, this is no reason to reverse and remand without having the whole story before us. And to the extent the record tells us anything, it's that Pirie consented to the remote proceeding by not objecting in any fashion.

It would be fundamentally unfair to the State and the district court to reverse on an issue that was never raised below. This is one of the animating principles of our error-preservation rules. *E.g., State v. Tobin*, 333 N.W.2d 842, 844 (Iowa 1983). The restrictions of error preservation are required by our constitution and jurisdictional statutes. *See* Iowa Code § 602.5103(1); *State v. Gomez Medina*, 7 N.W.3d 350, 355 (Iowa 2024). And none of the countervailing considerations— like the difficulty of objecting mid-stream to use of an impermissible factor during discretionary sentencing—are present here. *See State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998) ("It strikes us as exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal."). If Pirie didn't want to be sentenced remotely, all he had to do was say something.

For these reasons, and because we do not believe we have authority to ignore the supreme court's controlling holdings in *Gordon* and *Tindell*, we conclude Pirie failed to preserve error on the remote sentencing issue.

**E. Sentencing.**

Finally, Pirie argues the district court abused its discretion in sentencing him to prison for theft of a bottle of liquor worth about $55 and ordering that the prison sentence for the theft charge be served consecutively to the probation violation. Pirie argues the district court placed too much emphasis on one aggravating factor, his criminal history. He claims if the court would have considered mitigating factors, it would have sentenced him to probation and would not have run his two-year prison sentence consecutively to his 180-day probation revocation sentence.

"[T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor, and [it] will only be overturned for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). In order to establish an abuse of discretion, Pirie bears the burden to affirmatively show that the district court relied on improper factors or its decision was based on clearly untenable grounds. *State v. Sailer*, 587 N.W.2d 756, 759, 762 (Iowa 1998). "The societal goals of sentencing are to provide maximum opportunity to rehabilitate the defendant and to protect the community." *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020). "A sentencing court weighs multiple factors, 'including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform,'" which encompass mitigating factors as well as aggravating. *Id.* (quoting *Formaro*, 638 N.W.2d at 725).

"The test for whether a sentencing court abused its discretion is not whether we might have weighed the various factors differently." *Gordon*, 998 N.W.2d at 863. A ground is untenable if "it is based on an erroneous application of the law." *See Willard v. State*, 893 N.W.2d 52, 58 (Iowa 2017) (quoting *Sioux Pharm, Inc. v. Eagle Labs, Inc.*, 865 N.W.2d 528, 535 (Iowa 2015)). "[M]ere disagreement with the sentence imposed, without more, is insufficient to establish an abuse of discretion." *State v. Pena*, No. 15-0988, 2016 WL 1133807, at *1 (Iowa Ct. App. Mar. 23, 2016).

Pirie contends the district court abused its discretion in failing to consider all the appropriate sentencing factors, particularly ones in mitigation of punishment, including the nature of the offense, his acceptance of responsibility, his caretaking responsibilities for his disabled grandmother, his medical issues, his need for substance abuse treatment, and his proposal that placement at residential correctional facility would enhance his employment opportunities.

After hearing all of the evidence and arguments of counsel, and after reviewing the defendant's criminal history in the court file, the district court pronounced its sentence as follows:

> Okay. Well, I will state I did not wake up this morning thinking I would send you to prison but then I read your criminal history and that changed my mind.
> . . . .
> . . . Defendant is committed to the custody of the director of the Iowa Department of Corrections for an indeterminate term not to exceed two years with credit for time served. . . . The sentence shall run consecutively to the sentence of incarceration imposed in case number AGCR014826. The sentences run consecutive because they are separate and distinct crimes. The theft was committed when Defendant was on probation in AGCR. Also, Defendant is a habitual felon, has a long criminal history. The Court imposes this sentence

because it provides for the Defendant's rehabilitation and the protection for the community.

While the court's explanation was brief, it was sufficient to provide a basis for review. As we recently stated in *State v. Avila*, No. 23-1259, 2024 WL 3286975, at *4 (Iowa Ct. App. July 3, 2024):

> [A] terse and succinct statement may be sufficient, so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion. But a boilerplate statement of reasons is not sufficient to satisfy the requirement. Even though the court must state its reasons for imposing consecutive sentences, in doing so the court may rely on the same reasons for imposing a sentence of incarceration.

(Cleaned up.)

The district court properly relied upon Pirie's criminal history in determining that a prison sentence was warranted. *See State v. Williams*, 315 N.W.2d 45, 60 (Iowa 1982) ("The trial record and presentence investigation reveal that defendant has had a history of criminal conduct and that most of the factors reflect unfavorably on him. We find no abuse of discretion by the trial court in imposing the maximum sentence allowed by law."). Pirie had a long history of criminal conduct including periods of incarceration, and he was on probation when the theft of tequila occurred. The court reasonably concluded probation was not sufficient to rehabilitate Pirie or to protect the community from further crimes by him. The district court performed an individualized analysis of Pirie's case and did not employ boilerplate language. The court stated sufficient reasons for imposing a prison sentence for the theft charge consecutive to the probation revocation. While the court could have extended Pirie's probation, the sentence imposed was well

within statutory limits and was not an abuse of discretion. *See Formaro*, 638 N.W.2d at 724.

**AFFIRMED**

Buller, J., and Bower, S.J., concur; Gamble, S.J., partially dissents.

**GAMBLE, Senior Judge** (concurring in part and dissenting in part).

I concur with the parts of the per curiam opinion dealing with recusal and unavailability of a witness. However, I respectfully dissent on the issues of hearsay and remote sentencing. I would reverse the judgment and remand for a new trial because the district court erroneously admitted implied hearsay on the central issue of identification, which was prejudicial to Pirie. If I reached the sentencing issue, I would also find Pirie was not required to preserve error on the remote sentencing procedure. Because I believe the district court did not obtain Pirie's consent to remote sentencing, I would remand for in-person sentencing.

Pirie challenges the following testimony of Officer Johnson:

> Q. So you interviewed [Cody and Jason]; is that right? A. Yes, ma'am.
> Q. And they—and you asked them about their presence the day before; is that right? A. Yes, ma'am.
> Q. Did they provide you with consistent versions of events? A. Yes, ma'am.
> Q. Did you then interview the [d]efendant? A. Yes, ma'am.
> Q. Did the [d]efendant tell you where he was the day before? A. No, ma'am.
> Q. Did he deny being at [the grocery store] the day before? A. Yes, ma'am.
> Q. Was his statement consistent or inconsistent with the version of events provided to you by [the other two men]? A. Inconsistent.

Pirie argues that the State was allowed to elicit implied or backdoor hearsay regarding the content of Jason and Cody's statements to the officer—specifically, that they both implied they were at the grocery store the previous day and Pirie was with them. *See State v. Judkins*, 242 N.W.2d 266, 268 (Iowa 1976) (recognizing it was error to allow the State's expert to testify that his opinion "had been confirmed" by the defense's expert because it circumvented the hearsay rule

by allowing the State to indirectly provide evidence of the defense expert's opinion); *State v. Huser*, 894 N.W.2d 472, 493–97 (Iowa 2017) (discussing "backdoor hearsay," where evidence that appears on its face not to be inadmissible hearsay is used so that jurors will draw an improper hearsay inference); *see also Inferential hearsay*, *Black's Law Dictionary* (12th ed. 2024) (defining "inferential hearsay" as "[h]earsay that is implied in testimony that suggests the contents of a conversation that is not explicitly disclosed by the testimony").

I agree with Pirie. The clear implication of the challenged testimony was that both Jason and Cody made statements to Officer Johnson that they were at the grocery store the day before with Pirie. Since our hearsay rule would not allow the State to present the content of Jason's and Cody's out-of-court statements through its questions to Officer Johnson if the statements were offered to prove the truth of the matter asserted, the State chose to do so by implication. This is referred to as "backdoor hearsay." *See Huser*, 894 N.W.2d at 497 (providing that backdoor hearsay occurs when "the question and answer [does] not produce hearsay 'in the classic or textbook sense,' [but] the questioning was nevertheless designed to circumvent the hearsay rule and present the jury with information from unsworn, out-of-court sources" (citation omitted)).

"The rule prohibiting hearsay evidence only forbids an out-of-court statement used 'to prove the truth of the matter asserted in the statement.'" *State v. Dessinger*, 958 N.W.2d 590, 603 (Iowa 2021) (citation omitted). But we are not required to accept the State's proffered rationale regarding why the prosecutor wanted the officer's testimony in evidence at face value. *See Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 265–66 (Iowa 2019) ("We do not rely on the

purpose urged by the party offering the alleged hearsay; rather we look at the true purpose for which the party offered the testimony. We make our determination on 'an objective finding based on the facts and circumstances developed by the record.'" (citations omitted)). The State argues the out-of-court statements were merely offered to prove Pirie's denial was false and his fabrication was probative of consciousness of guilt. But to prove Pirie's statement was false, the State had to prove Jason's and Cody's statements were true. In my view, the State offered the evidence that Cody's and Jason's statements were consistent with each other and inconsistent with Pirie's denial to prove the truth of the implication that Jason and Cody told the officer that they were at the grocery store the day before and that Pirie was with them. Why is this important? Because the district court only allowed the officer to identify Pirie as one of the individuals on the body camera footage from August 4, when the officer came upon the three men while investigating the grocery's store report of the theft. The court refused to allow the officer to testify that Pirie was the individual in the grocery store's surveillance video from August 3. And there was no other testimony identifying Pirie as the individual in the surveillance video at the grocery store on August 3.

Based on an objective review of the entire record, I find the true reason the prosecutor wanted to use the contents of Jason's and Cory's statements to Officer Johnson was for the truth of the matter asserted—to establish that they were at the grocery store on August 3 with Pirie. Indeed, the prosecutor emphasized the statements in closing argument:

> You saw the officer's body camera footage. You see the same three individuals that are all still together the very next day on August 4th and they're at a different store here in Jefferson, Iowa.

Cody and Jason . . . tell[] a story to law enforcement and their version of events, it matches. [Pirie's] story does not. The three individuals are in that same vehicle, that red vehicle, that red Sedan. [Pirie] denies his presence there at [the grocery store], why?

The prosecutor did not argue consciousness of guilt; the prosecutor argued all three individuals were in the same red sedan at the grocery store on August 3. Based on my objective review of the entire record, I conclude the district court erroneously admitted hearsay because the out-of-court statements of Jason and Cody were offered to show Pirie was at the store and they were offered to prove the truth of the matter asserted. *See* Iowa Rs. Evid. 5.802 (rule against hearsay); 5.801 (defining hearsay).

And I dissent from the majority's view that the admission of this hearsay evidence was harmless error because it did not prejudice Pirie's substantial rights. In my view, the State failed to rebut the presumption of prejudice resulting from the erroneously admitted hearsay. *See State v. Skahill*, 966 N.W.2d 1, 15–16 (Iowa 2021).

This evidence went to the hotly contested issue of identification. There was no other evidence identifying Pirie as the individual in the surveillance videos. The store manager did not see Pirie at the store on August 3. The police officer was not present. There was no lineup, photographic array, or in-court identification. The store manager merely reviewed the surveillance videos. He did not testify that Pirie was the individual depicted in those videos. This was just an assumption. *See State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002) ("The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture."). I find would the admission of the statements made by Jason and

Cody prejudiced Pirie's substantial rights because the only identification evidence was the hearsay that came in through the backdoor. Therefore, I would conclude the error admitting hearsay that placed Pirie at the scene of the crime was not harmless. *See Hawkins*, 929 N.W.2d at 267 ("When inadmissible hearsay evidence directly addresses a hotly contested central dispute of the parties, it is harder for us to find the evidence nonprejudicial." (cleaned up)).

I also part ways with the majority concerning Pirie's challenge of the district court's use of remote proceedings for sentencing without the parties' consent and without first obtaining his waiver of in-person sentencing. The majority holds Pirie failed to preserve error because he did not raise the issue regarding remote proceedings to the district court and "the normal rules of error preservation apply." *State v. Gordon*, 921 N.W.2d 19, 23 (Iowa 2018). "[A] claim of procedural error is not a claim of illegal sentence, and therefore, it is precluded by our normal error-preservation rules." *Tindell v. State*, 629 N.W.2d 357, 360 (Iowa 2001). The majority reasons it would be unfair to the State and the district court to reverse on an issue that was never raised below.

In my view, Pirie was not required to preserve error. Unlike *Gordon*, Pirie did not need to make additional record or provide other evidence for us to determine whether holding remote proceedings without the consent of the parties requires reversal. *See State v. Patten*, 981 N.W.2d 126, 130 (Iowa 2022) ("To warrant reversal of a sentence, the record must show some 'abuse of discretion or some defect in the sentencing procedure.'" (citation omitted)). The court had already determined it was conducting this contested sentencing proceeding remotely without any input from Pirie because the judge had COVID-19.

Pirie relies on Iowa Supreme Ct. Supervisor Order, *In the Matter of Remote Judicial Proceedings* (Nov. 4, 2022). This was one of a series of supervisory orders entered by the supreme court in response to the extraordinary conditions of the COVID-19 pandemic. This supervisory order was in effect at the time of his March 1, 2023 sentencing. The supervisory order was an emergency departure from our normal rules of criminal procedure including the right of a defendant to personally address the court to make a statement in mitigation of punishment. *See* Iowa R. Crim. P. 2.23(3)(d). The supreme court noted "[a]ll contested court proceedings are presumed to occur in person" because that was the prevailing pre-pandemic practice. And the court ordered, "[a] contested testimonial proceeding may occur by videoconference or telephone *only* with the consent of all parties and in the court's discretion." (Emphasis added.) This imposed a duty on the district court to obtain the consent of the parties before proceeding remotely. To obtain Pirie's consent, the district court had an obligation to engage in a colloquy with Pirie to ascertain if he knowingly, voluntarily, and intentionally consented to remote proceeding under the supervisory order. *See State v. Roe*, No. 21-0457, 2022 WL 2824732, at \*5–6 (Iowa Ct. App. July 20, 2022); *State v. Emanuel*, 967 N.W.2d 63, 69 (Iowa Ct. App. 2021).

The majority dismisses *Roe* and *Emanuel* because the State did not contest error preservation in those cases. *See Emanuel*, 967 N.W.2d at 69; *Roe*, 2022 WL 2824732, at \*5–6. Perhaps the State did not contest error preservation in *Roe* and *Emanuel* because, under the COVID-19 supervisory orders effective at the time, a colloquy was required to obtain the defendant's waiver of personal appearance. *See Roe*, 2022 WL 2824732, at \*5 (citing *State v. Feregrino*, 756

N.W.2d 700, 706 (Iowa 2008) (finding an "on the record" waiver requires "some in-court colloquy or personal contact between the court and the defendant, to ensure the defendant's waiver is knowing, voluntary, and intelligent," and "substantial compliance" is "acceptable" (citation omitted))). In this case, the judge simply stated, "So this hearing is being held by Go To meeting because I tested positive for [COVID-]19." The court then launched into the sentencing hearing. There was no room for discussion. There was no colloquy with Pirie to determine if he consented to remote proceedings.

The majority complains "[i]t would be fundamentally unfair to the State and the district court to reverse on an issue that was never raised below" and "[i]f Pirie didn't want to be sentenced remotely, all he had to do was say something." To me, it was unfair to the defendant for the district court to hold a sentencing hearing remotely without first addressing the issue with the defendant. It put Pirie in the awkward position of having to object at sentencing to a decision the district court had already made. *See State v. Cooley*, 587 N.W.2d 752, 754 (Iowa 1998) ("It strikes us as exceedingly unfair to urge that a defendant, on the threshold of being sentenced, must question the court's exercise of discretion or forever waive the right to assign the error on appeal."); *see also State v. Allen*, No. 23-0152, 2023 WL 8069210, at *4 (Iowa Ct. App. Nov. 21, 2023) (reversing for resentencing without requiring the defendant to preserve error where record did not include a knowing and voluntary waiver of the use of a validated risk assessment.).

The majority states, "[it] is very possible—perhaps very likely—that the parties had an off-the-record discussion about whether to proceed with sentencing remotely or continue it for a later in-person hearing, given the judge's COVID-19

diagnosis." But, as we observed in *Roe*, "The COVID-19 pandemic imposed a tremendous burden on our district courts, and Roe may very well have attempted to waive his right to in-person sentencing outside the record. But the absence of a written or on-the-record waiver violates the supreme court's supervisory order." 2022 WL 2824732, at *5. It was the court's duty to ensure that it obtained Pirie's consent on the record.

Because Pirie was not required to preserve error, and because the record is devoid of any consent from the parties to proceed remotely, I conclude the district court violated the supervisory order by sentencing the defendant remotely without his consent.